NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SESCO ENTERPRISES, LLC
    By and through Michael Schubiger,
    its Tax Matters Partner

            Petitioner,

v.

UNITED STATES OF AMERICA,

            Respondent.

Civ. No. 10-1470 (AET)

**OPINION & ORDER**

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court on Respondent's Motion for Judgment on the Pleadings [docket # 10]. The Court has decided this motion after considering the parties' submissions and hearing oral argument on October 12, 2010. For the reasons given below, Respondent's Motion is GRANTED.

BACKGROUND

Petitioner, SESCO Enterprises, LLC, seeks relief from readjustments made by the Internal Revenue Service to Petitioner's federal income tax returns for 2004 and 2005.

Petitioner trades in electricity futures contracts on regulated marketplaces ("exchanges"). Among those exchanges on which Petitioner trades are four operated by "independent system operators" or "regional transmission organizations" (collectively, "ISOs"), regulated by the Federal Energy Regulatory Commission. The primary issue in this case is the tax treatment of gains Petitioner realized on trades made on these ISOs.

Congress, in section 1256 of the Internal Revenue Code, 26 U.S.C. § 1256, created a statutory regime for the tax treatment of futures contracts.  Under the statute, a "section 1256 contract" is deemed sold for its fair market value at the end of each year (a process called "marking to market").  26 U.S.C. § 1256(a).  Any gains or losses realized are calculated as 40% short-term capital gain or loss and 60% long-term capital gain or loss.  *Id*.  In order for Petitioner's contracts to qualify for this favorable "60/40" treatment, the contracts must have been traded on a "qualified board or exchange" ("QBE").[1]  Section 1256(g)(7) defines QBEs in three ways: (A) a national securities exchange registered with the Securities and Exchange Commission, (B) a domestic board of trade designated as a contract market by the Commodity Futures Trading Commission ("CFTC"), or (C) "any other exchange, board of trade, or other market which the Secretary [of the IRS] determines has rules adequate to carry out the purposes of this section."  26 U.S.C. § 1256(g)(7).

The ISOs on which Petitioner traded do not qualify under subsections (A) or (B), and the IRS has not made the determination under subsection (C) that the ISOs have rules adequate to carry out the purposes of § 1256.  Accordingly, when Petitioner reported income from trading on ISOs as gains from § 1256 contracts on its 2004 and 2005 tax returns, the IRS conducted an audit and denied the favorable treatment.  During the audit process, Petitioner requested a Private Letter Ruling asking the IRS to determine under § 1256(g)(7)(C) that the ISOs are indeed QBEs. The IRS refused, asserting that the request for a QBE determination must be made by the exchange itself.  Petitioner asked one of the ISOs to make the request, but the ISO declined to do so.  Ultimately, the IRS readjusted Petitioner's returns to reflect the increased tax liability.

---

[1] Section 1256(b) identifies six types of "section 1256 contracts."  The parties agree that Petitioner's trades are "regulated futures contracts" under § 1256(b)(1).  Regulated futures contracts are those (A) following a system of marking to market—which the parties agree is satisfied—and (B) "which [are] traded on or subject to the rules of a qualified board or exchange."  § 1256(g)(1).  The present dispute centers on the requirement in part (B).

Petitioner then filed this suit challenging the IRS's adjustments. In Counts One and Two (one for each tax return), Petitioner asserts that the IRS acted arbitrarily and capriciously and abused its discretion when it refused to make a QBE determination except upon request from the ISO. Count Three alleges that the IRS failed to follow certain procedural requirements in conducting Petitioner's audit and appeal in violation of a Treasury Regulation, 26 C.F.R. § 601.106(f)(9)(iii), and two Revenue Procedures, Rev. Proc. 2010-2 and 2000-43.

Respondent filed the instant motion seeking a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[2] Respondent argues that the IRS's refusal to make the determination is not judicially reviewable because, under the Administrative Procedures Act ("APA"), the United States has not waived sovereign immunity to challenge an agency's action where the action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). If the Court takes jurisdiction over the claim, Respondent believes the Court must order the Petitioner to join the relevant ISOs as necessary parties because the exchanges' interests will be affected should the Court order the IRS to make a QBE determination. Regarding Count Three, Respondent asserts that the petition fails to state a claim upon which relief can be granted by misreading the regulations and making conclusory legal allegations.

## ANALYSIS

A. Legal Standard

A court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable

---

[2] Attached to Respondent's motion is an affidavit from K. Scott Brown, an attorney for the IRS, asserting that the IRS has followed a "two step process" for making previous QBE determinations. The affidavit is not properly before the Court on a motion for judgment on the pleadings, and therefore we disregard it.

to the nonmoving party, but the Court will disregard any unsupported conclusory statements. *Id.* at 262-63. In this case, Respondent is the moving party, so the Court accepts as true all well-pleaded factual allegations in the Petition.

B. <u>Judicial Review of the IRS's Decision</u>

The APA provides a general waiver of sovereign immunity for suits alleging injury from an agency's action, 5 U.S.C. § 702, but it creates two exceptions to that waiver: first, where a statute precludes review, § 701(a)(1), and second, where "agency action is committed to agency discretion by law," § 701(a)(2). Respondent argues in its motion that § 1256 commits the QBE determination—and the decision to make a determination or not—entirely to the IRS's discretion, thereby precluding judicial review. We agree.

The § 701(a)(2) "exception . . . remains a narrow one," and Respondent confronts a "broad presumption in favor of reviewability." *Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs*, 343 F.3d 199, 204 (3d Cir. 2003) (internal citations omitted). To overcome the presumption, Respondent must present "clear and convincing evidence of a contrary legislative intent." *Id*. at 203. In *Raymond Proffitt*, the Third Circuit identified the framework for courts to follow in determining whether an agency decision is unreviewable under § 701(a)(2). Courts should consider whether:

> 1) the action involves broad discretion, not just the limited discretion inherent in every agency action; 2) the action is the product of political, military, economic, or managerial choices that are not readily subject to judicial review; and 3) the action does not involve charges that the agency lacked jurisdiction, that the decision was motivated by impermissible influences such as bribery or fraud, or that the decision violates a constitutional, statutory, or regulatory command.

*Id*. at 205.  Although courts have found this framework useful, the "common thread" in cases holding that § 701(a)(2) precluded judicial review is a finding that "on the face of the statute there is simply 'no law to apply.'"  *Id*. at 206 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)).[3]  Respondent's motion argues that § 1256 provides no law that a court can apply to review the IRS's refusal to make the QBE determination.  In opposition, Petitioner makes two main arguments why we should find there is law to apply.  First, Petitioner claims that § 1256 contains language making the QBE determination mandatory.  (Opp'n Br. 9.)  Second, Petitioner purports to find judicially manageable standards in the legislative history explaining the purposes of § 1256.  (Opp'n Br. 18.)  We find these arguments unavailing.

Under established doctrine, mandatory statutory language (e.g. "shall") supports judicial review while precatory language (e.g. "may") bespeaks discretion.  *See, e.g., Raymond Proffitt*, 343 F.3d at 206 (agency's action was reviewable because use of word "shall" in statute distinguished it from other statutes "written in the language of permission and discretion"); *Selman v. United States*, 941 F.2d 1060, 1064 (10th Cir. 1991) (finding judicial review of IRS action inappropriate in part because statute authorizing agency action used word "may" as opposed to "shall").  This case does not clearly square with the doctrine because the operative language ("any other exchange . . . which the Secretary determines has rules adequate . . .") contains no words such as "may" or "shall" that so clearly reveal legislative intent.

Respondent argues that, because § 1256 does not state that the IRS is required to make QBE determinations upon request, does not establish procedures for the determination process,

---

[3] The Third Circuit added, however, that the search does not necessarily end with the statute: "Where a statute itself has been permissive or discretionary as to the agency, this Court has even read an agency's self-imposed practices or regulations into the statute so as to provide a basis for review."  *Raymond Proffitt*, 343 F.3d at 206.  The IRS has not published any regulations or practices explaining the process for making a QBE determination.  However, Petitioner urges the Court to consider the steps outlined in the Brown affidavit as additional "law to apply."  Even if the steps identified in the affidavit rise to the level of a self-imposed practice or formal regulation, which is doubtful, we do not find that it provides standards sufficient to allow the Court to review the IRS's decision.

and does not provide a remedy when requests such as Petitioner's are refused, the statute is clearly permissive. (Br. in Supp. 1.) To rebut this, Petitioner points to mandatory language in § 1256(g)(8), which defines "option dealer." (Opp'n Br. 8-10.) That section states:

> In any case in which the Secretary makes a [QBE] *determination* . . . , the term "options dealer" also includes any person whom the Secretary *determines* performs functions similar to [registered options dealers]. *Such determinations shall be made* to the extent appropriate to carry out the purposes of this section.

26 U.S.C. § 1256(g)(8)(B) (emphasis added). Petitioner claims that, because the first sentence refers to both QBE and options dealer determinations and the second sentence refers to *determinations* in the plural, the word *shall* refers to both QBE and options dealer determinations. Petitioner bolsters this argument by reference to another similarly-structured provision that uses the singular *determination*. *See* 26 U.S.C. § 1256(g)(9)(B).

      Petitioner's reading of the statute is unconvincing. There is no clear reason why the plural *determinations* cannot refer to options dealer determinations only. If anything, the word *such* may indicate the intent to distinguish options dealer determinations from QBE determinations. More importantly, if Congress intended to make QBE determinations under subsection (g)(7)(C) mandatory, it would be odd for the mandate to be found in a separate definitional subsection rather than in subsection (g)(7)(C) itself.

      Petitioner next argues that there is law to apply in the operative language: "any other exchange, board of trade, or other market which the Secretary [of the IRS] determines has rules adequate to carry out the purposes of this section." 26 U.S.C. § 1256(g)(7)(C). Section 1256 does not explicitly state its purposes, so the parties turn to legislative history for help. Respondent highlights a Senate Report stating the committee's belief that § 1256 will, among other things, "ease tax administration and paperwork for both government officials and

taxpayers." S. Rep. No. 97-144, at 156 (1981). Respondent contends that easing tax administration is simply not an ascertainable standard the Court can apply. Petitioner counters with language indicating congressional intent to "harmonize [the] tax treatment of commodity futures contracts with the economic realities of the marketplace," *id*., and generally treat similarly situated taxpayers similarly, (Opp'n Br. 18). Petitioner believes it is not being treated similarly because the ISOs on which it trades are identical in all material respects to those markets the IRS has qualified as QBEs as well as the contract markets regulated by the CFTC—an "automatic" category of QBEs under § 1256(g)(7)(B). (Opp'n Br. 2.)

We find that the legislative history does not provide law to apply. First, the cited principles—easing tax administration, harmonizing tax treatment with marketplace reality, and treating similar cases alike—may produce conflicting imperatives, and the legislative history does not make clear what relative weight or priority each should receive. Second, even if we focus on Petitioner's preferred principle—treating similar cases alike—the legislative history offers no guidance on what constitutes a similar case. Petitioner claims that it should be treated the same as those trading on exchanges regulated by the CFTC, but Respondent correctly points out that the traders most similar to Petitioner are those who traded on the same ISOs and yet did not claim or did not receive the favorable 60/40 treatment.

We therefore hold that there is no law to apply, and the clear and convincing evidence shows a legislative intent to preclude judicial review. As a result, this court does not have jurisdiction to hear Counts One and Two of the Petition.

C. Procedural Requirements of the Appeals Process

Count three of the Petition alleges that the IRS and its officers failed to follow certain required procedures, thus jeopardizing the independence of the appeals process. Respondent's motion asserts that the Petition fails to state a claim for relief. We agree.

When Petitioner appealed the IRS's initial ruling, it was assigned an appeals officer from the field Appeals Office ("Appeals"). During the appeals process, Appeals can request technical advice from the IRS's National Office, but certain procedures must be followed. Petitioner asserts two violations of those procedures. First, Appeals (through appeals officers John Boyle and Frank Kronthal) arranged a conference call with the National Office. Petitioner characterizes the conference call and any prior communication necessary to arrange the call as a "request for technical advice." *See* 26 C.F.R. § 601.106(f)(9). When Appeals requests technical advice from the National Office, it must provide Petitioner with a copy of the facts and questions posed to the National Office and an opportunity to respond. § 601.106(f)(9)(iii). This was not done. Second, on that conference call—which Petitioner's representative participated in—Robert Williams of the National Office stated that he "would not give SESCO a dime." (Pet. ¶ 47.) Petitioner contends this violated a provision in Rev. Proc. 2000-43 barring the National Office from "provid[ing] advice that includes recommendations of settlement ranges." Neither of these two alleged violations states a claim on which relief can be granted.

Concerning the first alleged violation, we find that the conference call, and whatever communication preceded it, was not a formal request for technical advice and did not, therefore, trigger the procedural requirements. Technical advice is defined as "advice or guidance as to the interpretation and proper application of internal revenue laws, related statutes, and regulations, to a specific set of facts" provided by the National Office in connection with an appeal. 26 C.F.R. § 601.106(f)(9)(i)(a). In Rev. Proc. 2009-2, this definition is clarified as follows: "Technical advice does not include any oral legal advice or any written legal advice furnished to the field office that is not submitted and processed under this revenue procedure." Rev. Proc. 2009-2 at § 3.01. The proper procedure requires that "[e]very request for technical advice must include a memorandum that describes the" facts, issues, law, and arguments. *Id.* at § 7.01. The proper

response from the National Office is "advice furnished . . . in a memorandum . . . ." *Id.* at § 3.01. The requirement of a formal memorandum is essential because a technical advice memorandum is "an expression of the views of the [IRS]" on the application of law, regulation, and precedent to a case. 26 C.F.R. § 601.106(f)(9)(viii)(a). The conference call did not involve a memorandum of request or a memorandum furnishing advice and, therefore, was not technical advice. As a result, there was no violation of the relevant regulations.

Concerning the second alleged violation, Mr. Williams's statement on the conference call that he "would not give SESCO a dime" was not a violation of Rev. Proc. 2000-43 because it did not occur ex parte (without the taxpayer's participation). Rev. Proc. 2000-43 is titled "Prohibition of Ex Parte Communications . . . ;" the section at issue is titled "Guidance Concerning *Ex Parte* Communications . . . ;" and the subsection is titled "Does the prohibition on ex parte communications have any impact on the relationship between Appeals and [the National Office]?" Finally, the very next line after the prohibition on settlement recommendations refers to "[t]he foregoing limits on ex parte communications . . . ." Rev. Proc. 2000-43. Petitioner counters that, despite the section titles, nothing in the prohibition itself is limited to ex parte communications. Petitioner believes a broader application of the prohibition on settlement recommendations is warranted because the goal of providing an independent appeals process is compromised any time the National Office recommends a settlement range— whether the taxpayer is present or not. Petitioner may be correct that a broader rule would be a better rule. However, the rule as it now stands applies only to ex parte communications. Therefore, Petitioner is not entitled to relief on this claim.

## CONCLUSION

Accordingly, IT IS on this 16th day of November, 2010,

ORDERED that Respondent's Motion for Judgment on the Pleadings [10] is GRANTED; and it is further

ORDERED that the Petition is DISMISSED; and it is further

ORDERED that this matter is CLOSED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.